CASE No. 1043.

BRATTON v. MASSEY.

1. A deed of indenture, executed in 1866, by A, his wife, and B, by which A and his wife agreed to separate and live apart, in its preamble recited an agreement that A should convey certain described property to B, to be held and managed by B as trustee for the sole and separate use of the wife, and to be at all times fully and absolutely at her disposal, under directions of the trustee during her life, and by will at her death, as if she were *sole.* By this deed A conveyed to B, his heirs and assigns forever,

a certain lot of land, in trust for the wife of the grantor, to allow her to "occupy, use and enjoy all of said property and estate, in the same manner as if she were unmarried," or to collect the rents and profits, and apply the same to her support and maintenance; that the trustee should sell, at the written request of the wife, and re-invest the proceeds or dispose of them for her support and maintenance, and what remained at her death she might devise by her last will as if a *feme sole*—the wife accepting this provision in full satisfaction of support, maintenance and alimony. The husband died, and afterwards the wife, without a will, the property remaining unsold. *Held*, that the wife took an absolute estate in fee simple in the land, which, at her death, descended to her heir-at-law. SIMPSON, C. J., *dissenting*.

2. The release by the wife of all claim against her husband for alimony, made her a purchaser of the estate for valuable consideration, and made the conveyance to her trustee to be for her sole and exclusive benefit, with full power of disposition in her. SIMPSON, C. J., *dissenting*.

Before KERSHAW, J., Chester, June, 1880.

This was an action commenced August 11th, 1879, by John S. Bratton against Benjamin H. Massey, the heirs-at-law of W. T. Gilmore and certain creditors, who, together with the plaintiff, had established demands against the estate of W. T. Gilmore, under proceedings had in the Circuit Court for Chester county, in 1869. B. H. Massey was also sole heir-at-law of Mary E. Gilmore. The case is stated in the opinion. The Circuit decree, after stating the facts, continued as follows:

This was a deed made by the husband to provide for the separate maintenance and support of the wife, and for a separation. It was voluntary, there being no covenant on the part of the trustee to save the husband harmless in respect of the debts of the wife. Such a deed would be voidable by the creditors under the statute 13 Elizabeth. *Smith's L. Cas.* \*12; *Fitzer* v. *Fitzer*, 2 *Atk.* 513.

But that ground is not taken here, and, if it had been, it might have been answered that the claim was barred by the statute of limitations, after four years from the execution of the deed, as in *Lott* v. *De Graffenreid*, 10 *Rich. Eq.* 346.

I proceed, therefore, to the question as presented. There is no doubt that the conveyance to Massey was in fee. The words employed were those usual and proper for that purpose. This,

however, settles nothing as to the resulting trust. The deed authorized the trustee to sell and convey and re-invest during the life of Mrs. Gilmore, and she was authorized to dispose of the property by will. It was, therefore, necessary for the purposes of the deed that the fee should be in Massey.

The real question is, what was the interest of Mrs. Gilmore? Was it a life estate, or a fee? If it was a life estate, then all the trusts declared in the deed terminated at her death, she having failed to dispose of it by will under the power conferred upon her by the deed. In that case the trust resulted to the heirs of the grantor. 2 *Story's Eq.* 1196 *a; Hill. on Trust.* 114; 4 *Kent* 307; 2 *Washb. on Real Prop.* 472; *Lloyd* v. *Spillet*, 2 *Atk.* 150.

It is contended by defendant that, a consideration being expressed in the deed ($1), there can be no resulting trust according to the proposition laid down by Mr. Washburne, (Book 2, ch. II., § 2, ¶ 43,) as applicable to uses. But in regard to trusts, it is different, as may be seen from the same author, (Book 2, ch. I., § 2, ¶ 12,) where it is said that " if the consideration were not something substantial, equity would interpose and hold the bargainee, though the owner of the legal estate, as the trustee of the bargainor." Here the consideration was merely nominal which passed from the grantee, who is an express trustee, without any beneficial interest whatever, and, so far as the *cestui que trust* is concerned, there was no legal consideration whatever.

It appears to me plain that the estate of Mrs. M. E. Gilmore was limited to her life. A conveyance by deed of lands generally, without the word " heir," carries no more than the life estate. 4 *Kent* 5. *Washb.*, Book 2, § 2, ¶ 28 : " In interpreting the words in which a trust is declared, courts adopt the same rules as in granting the legal estate. *Thus, a trust in favor of A, with no words of inheritance, would be for life only." Id.*, § 3, ¶ 4.

The deed plainly declares the object of the trust to be to provide for the maintenance and support of Mrs. Gilmore. It is true, the whole might have been expended for that purpose by the trustee, if necessary, yet the words import no more than a life estate. No further expenditure could be made by the

trustee for her *support* and *maintenance* after her death.   What then remained the deed gave her the power of disposing of by will, "*notwithstanding her coverture, as if she were sole and unmarried.*"   These words convey a naked power.   *Sugd. on Pow.* 125.   This power having failed of execution, the trusts of the deed are exhausted, and result to the grantor.

If these trusts had been created by will, a greater latitude of construction might have been admissible, and, under our statute, the gift would have been considered a fee simple, unless such construction would have been inconsistent with the intention of the testator.   *Rev. Stat.* 443.

The defendant contends that this was a gift generally, and not for life, and, being coupled with a general power to dispose of the estate, that it should be construed a fee simple.   Had that been the character of this gift, and it had arisen under a *will* or *devise*, there could have been no doubt of the proposition.   *Pulliam* v. *Byrd*, 2 *Strob. Eq.* 142.   Very good authority is cited in the margin of that case for the proposition that in a *devise* the same effect would follow, where the estate was limited for life, with a general power of appointment, though the law is there declared to be otherwise.   But I do not find any authirity for extending the principle to the case of trusts created by deed, in violation of the rule of common law requiring words of inheritance to create a fee, though there may be found some countenance for this view in certain decisions respecting marriage articles and executory trusts.   *Fonb. Eq., Book* 2, § 2, and note.

It will be observed that the deed under consideration does not convey an estate " *to the sole and separate use* " of Mrs. Gilmore, but in trust for her *maintenance* and *support.*   She had, therefore, no estate at all in the property conveyed.   It is like the case of *Hyde* v. *Price*, 3 *Ves.* 445, where Lord Alvanley says : " I am of opinion that this is not property she is entitled to, to her sole and separate use.   There is a special trust upon it. She has no dominion over it."   See the observations of Mr. Roper upon deeds of this character in his learned treatise on Husband and Wife, vol. II., p. 304.

For these reasons I conclude that at the death of Mrs. M. E. Gilmore the trust in the property conveyed by the said deed

resulted to the heirs of W. T. Gilmore, and the same became liable for the payment of the debts established against his estate.

Defendant appealed.

*Messrs. R. E. Allison* and *W. B. Wilson*, for appellant.

*Mr. G. J. Patterson*, contra.

June 28th, 1881.   The opinion of the court was delivered by McIVER, A. J.   On December 22d, 1866, W. T. Gilmore and wife, M. E. Gilmore, with the defendant, B. H. Massey, executed a deed of indenture in substance and to the effect following : After reciting that some unhappy differences had arisen between the husband and wife which had induced them to agree " to live separate and apart from each other, and, previous to such separation he, the said W. Taylor Gilmore, has consented thereto, and has agreed to transfer, release, convey, surrender and deliver certain real and personal property, hereinafter mentioned, for the support and maintenance of said M. E. Gilmore, to be held and managed by the said Benjamin H. Massey as trustee, in trust from henceforth to the sole and separate use of said M. E. Gilmore, and to be at all times as fully and absolutely at her disposal, under directions to her said trustee in her lifetime, or by will at her death, as if she were *sole* and unmarried," the deed proceeds as follows : " Now this indenture witnesseth that the said W. Taylor Gilmore, in pursuance of said proposal, promises and agrees with the party of the second part that the said M. E. Gilmore shall and may live separate and apart from him and reside in places and families of relations or friends or other persons, and follow such business and pursuits as she, at her will and pleasure, may think fit and desirable ; and further, that, as well for the consideration aforesaid as for and in consideration of the sum of $1 to the said W. Taylor Gilmore by the said Benjamin H. Massey paid, the said W. Taylor Gilmore has granted, bargained, sold, &c.,    *    *    *    all that lot of land, &c.    *    *    *    To have and to hold all and singular the

premises * * * unto the said Benjamin H. Massey, his heirs and assigns forever, in trust, however, and upon the confidence that he, the said Benjamin H. Massey, shall allow the said M. E. Gilmore to occupy, use and enjoy all of said property and estate, or that he shall collect and receive the rents, issues and profits thereof and apply the same to the support and maintenance of said M. E. Gilmore in same manner as if she were *sole* and unmarried. And, further, the said W. Taylor Gilmore covenants and agrees that it shall and may be lawful for the said Benjamin H. Massey, by deed or other sufficient writing, by and with the written directions and approva lof said M. E. Gilmore, to sell, transfer, deliver and convey the whole or any part of the property and estate herein and hereby conveyed and released, to such person or persons, and for such sum or sums of money or other valuable consideration as to him shall seem wise and prudent, and to sign and deliver good and sufficient title therefor to the purchaser, and by and with the written direction and approval of the said M. E. Gilmore, to re-invest the proceeds of said sale in other property better adapted to the wants, conveniences or wishes of said M. E. Gilmore, but subject to the same trust as the property so sold and delivered or otherwise disposed of as will best contribute to the decent and comfortable support and maintenance of said M. E. Gilmore. And the said W. Taylor Gilmore further covenants and agrees that it shall and may be lawful for the said M. E. Gilmore, by her last will and testament, to give, devise and bequeath the whole or any portion of the estate and property hereby conveyed and transferred, or other estate and property substituted in its place as hereinbefore authorized, that may remain unexpended at her death, to such person or persons, and in such proportions as she may direct and appoint; and said will, so executed, shall be as good and available at law, notwithstanding her coverture, as if she were *sole* and unmarried. In consideration of the estate and property herein and hereby conveyed, released, assigned and delivered by the said W. Taylor Gilmore in trust for said M. E. Gilmore, in manner as aforesaid, the said M. E. Gilmore, in the presence of and by and with the advice and consent of her friend, kinsman and trustee, said Benjamin H. Massey, does

hereby agree to accept and take the same in full satisfaction for her support and maintenance, and all alimony whatever during her coverture." The deed also contains a covenant on the part of Massey that he will accept the trusts conferred and carry out the same, but it contains no covenant that Massey will save W. T. Gilmore harmless against the debts of his wife.

W. T. Gilmore died intestate, in 1867, and his estate has proved to be insolvent. Mrs. Gilmore died in 1878 without having executed the powers conferred by the deed, and thereupon this action was commenced by the plaintiff, who had established a claim against the estate of W. T. Gilmore, under proceedings to marshal the assets of his estate, for the purpose of subjecting the real estate conveyed to Massey as trustee, by the above-mentioned deed, to the payment of the debts of W. T. Gilmore, upon the ground that the property conveyed by that deed was to be held by the trustee only for the life of Mrs. Gilmore, and that upon her death, without having disposed of the same by will, it reverted to the estate of W. T. Gilmore, and became liable for his debts.

The appellant, B. H. Massey, contends that, under a proper construction of the terms of this deed, Mrs. Gilmore took an absolute estate, which, at her death, descended to him as her sole heir-at-law, while the respondent contends that the estate was conveyed to the trustee for the sole purpose of securing to Mrs. Gilmore a support and maintenance during her life, with power in her to dispose of the same by will, and that she having died without executing the power, the whole of the trusts created by the deed were exhausted, and the estate reverted to the heirs of the grantor, and became liable for his debts. The Circuit judge sustained the view insisted upon by the respondent, and the real question raised by this appeal is whether, under a proper construction of the terms of the deed, the estate reverted to the heirs of the grantor or descended to the heir of Mrs. Gilmore.

If there was any trust resulting to the grantor or his heirs under the terms of this deed, it must be by implication, as it is not, and cannot be pretended that there is any express provision to that effect in the deed. It is contended, however, that inasmuch as the trusts declared by the deed do not exhaust the

whole estate, what remains after satisfying those trusts must necessarily revert to the grantor. This, of course, rests upon the theory that the whole estate was not exhausted by the trusts declared, and to this theory we are unable to assent, for we think that, by a proper construction of the deed, the whole estate was intended to be, and was, in fact, conveyed, and there was nothing left to revert to the grantor.

It is quite true that the estate is not conveyed in trust for Mrs. Gilmore *and her heirs*, and it is equally true that in a conveyance of the *legal* estate the word "*heirs*" is necessary to create a fee simple. It is likewise true, *as a general proposition*, as is said by Washburne in his work on Real Property, Book 2, ch. III., § 2, ¶ 28, that "in construing limitations of trusts courts of equity adopt the rules of law applicable to the legal estate," or that "declarations of trust are construed in the same manner as common law conveyances, where the estate is finally limited by deed," yet as the same writer says, in ¶ 40 of the same section, there are some exceptions to this rule, one of which he states, in ¶ 43, in the following language: "Another exception is that the word '*heirs*' is not always necessary in order to give an equitable estate the character of inheritability, if it requires that such an effect should be given in order to carry out the clear intention of the party creating it. Thus it is said, if land be given to a man without the word '*heirs*' and a trust be declared of that estate, and it can be satisfied in no other way but by the *cestui que trust* taking an inheritance, it has been construed that a fee passes to him even without the word 'heirs.'" Among the cases cited to sustain this doctrine are *Villiers* v. *Villiers*, 2 *Atk.* 71, and *Fisher* v. *Fields*, 10 *Johns.* 505, in both of which the question arose upon the construction of deeds, not wills, and the last sentence just quoted from Washburne is a quotation from the opinion of Lord Hardwicke in Villiers v. Villiers. In Fisher v. Fields, one B. Griffin, a discharged soldier in the Revolutionary war, having received his discharge entitling him to bounty land, sold his right to one Birch and delivered to him his discharge, upon which was the following certificate under his hand and seal: "This is to certify that the bearer hereof, J. B., is entitled to all the land that I (B. G.) am entitled to, either

from the state or continent, for my services as a soldier, certified in my discharge." The assignees of Birch sued out a patent for the land to which Griffin was entitled, which, under the statute, was issued in the name of Griffin. Subsequently Fields, with notice of this transfer to Birch, bought the land from Griffin and took a regular conveyance from him. In a contest for the land between the assignees of Birch and Fields, it was contended by the latter that the endorsement on the discharge not containing the word "*heirs*" could not operate as a transfer of anything more than the life estate. But the court held otherwise, and that although the patent was made out in the name of Griffin, he must, in equity, be regarded as a trustee for Birch and his assignees, and although the transfer contained no words of inheritance, yet, as the intention was manifest to sell the whole interest, the court would so construe it. Kent, C. J., in delivering the opinion of the court, used these words: "There never was a greater mistake, as I apprehend, than the supposition that this transfer of the soldier's right to Birch is to be tested by the strict technical rules of a conveyance of land at common law, and that Birch did not take the whole interest of the soldier, because the word '*heirs*' was not inserted in the assignment." Again, he says: "A trustee or *cestui que trust* will take a fee without the word '*heirs*' where a less estate will not be sufficient to satisfy the purposes of the trust." And again: "But what puts this point beyond all doubt, is the doctrine of the common law on the subject of uses and trusts. Before the statute of uses, if a man bargained and sold his land for a valuable consideration, without inserting the word '*heirs*,' the Court of Chancery would have decreed an execution of the use *in fee*, because the use was merely in trust and confidence, and because this was according to the conscience and intent of the parties. But after the statute of 27 Henry VIII., as the uses were transferred and made the legal estate, a different rule took place. A trust is merely what a use was before the statute of uses, and the same rules apply to trusts in chancery now which were formerly applied to uses. And in exercising its jurisdiction over *executory trusts* the Court of Chancery is not bound by the technical rules of law, but takes a wider range in favor of the intent of the party."

It seems to us, therefore, that in seeking to ascertain the nature and extent of the trust estate of Mrs. Gilmore, as created by this deed, we are not bound by the strict technical rules which would govern in the construction of a conveyance creating a *legal* estate, but that we must look to the intent of the parties, as evinced by the terms of the deed. Looking at this deed in this light, it is clear that the grantor intended to create in his wife an absolute estate in fee simple. It is very certain that he does not, in terms, limit the duration of the estate to the life of his wife, but, on the contrary, he invests her with powers which pre-suppose a larger estate than a simple life estate. The rights and powers given to her by this deed are precisely those of an absolute owner, and it is difficult to conceive how he could have conferred such absolute rights and powers, in the broad terms which he has used, without the intention of conferring upon her the absolute dominion over the estate, as far as it was practicable, under the law, as it then stood, for a married woman to hold and enjoy such an estate. For, as the law then stood, it was necessary for her protection that she, being a married woman, should have a trustee, but otherwise the deed gives her every right and every power which an absolute owner could have. She had the sole and exclusive right to the use, occupation and enjoyment of the land, and the rents, issues and profits were at her absolute disposal. She had the right to sell or dispose of, or what amounted to the same thing, require her trustee to sell or dispose of the whole or any part of the property, and either expend the proceeds for her own use, or re-invest the same in other property for her sole and exclusive benefit. And, finally, she had the right to dispose by will of any of the property which she had not consumed during her lifetime. What greater rights could the owner of the fee have? It is an entire mistake to suppose that the powers conferred upon Mrs. Gilmore were limited as to the manner of exercise—by will—and as to the subject upon which such power could be exercised—such portion of the estate as may remain unexpended at her death—for the deed gives her unlimited power of disposition during her life, and, in addition thereto, gives her the right to dispose, by will, of whatever remained

undisposed of during her lifetime, and this is all the power of disposition which the absolute owner of property has.

It is conceded that the deed conveys an estate in fee simple to the trustee, and one of the trusts is declared in the following words: "In trust, however, and upon the confidence that he, the said Benjamin H. Massey, shall allow the said M. E. Gilmore to occupy, use and enjoy *all* of said property *and estate* * * * in same manner as if she were *sole* and unmarried." Now, what *estate* is she thus to occupy, use and enjoy? The terms of the deed answer, "*all of said * * * estate,*" that is, *all* of the estate conveyed to the trustee, which is admitted to be the fee. It seems to us, therefore, that it is a mistake to say, as has been said, that no *estate* is conveyed to the sole and separate use of Mrs. Gilmore, and that the *property* is conveyed to the trustee only for the purpose of securing to her a maintenance and support during her life, for the deed, in express terms, conveys the fee simple to the trustee in trust that he shall allow Mrs. Gilmore to occupy, use and enjoy not only the *property* conveyed, but also the *estate*, which was, undoubtedly, a fee simple.

We think, also, that there was a valuable consideration for this deed proceeding from Mrs. Gilmore in the release by her of all claim against her husband for alimony. The deed declares that "in consideration of the *estate* and property herein and hereby conveyed * * * the said M. E. Gilmore * * * does hereby agree to accept and take the same in full satisfaction for her support and maintenance and all alimony whatever during her coverture." This amounted to a release of any claim she might otherwise have upon her husband for alimony, and such release was certainly a valuable consideration proceeding from her, and she may be regarded as in fact a purchaser of the estate conveyed to her trustee to be held by him for her sole and exclusive benefit, with the same powers of disposition as would belong to the owner of the fee.

We are therefore unable to perceive any ground upon which a resulting trust can be implied in the grantor, and, on the contrary, are of opinion that the terms used manifest an intent to create an absolute estate in fee simple in Mrs. Gilmore, which,

upon her death, descended to the appellant as her heir-at-law, and that a Court of Equity is bound to carry into effect such intent.

The judgment of this court is that the judgment of the Circuit Court be reversed and that the complaint be dismissed.

McGOWAN, A. J., concurred.

SIMPSON, C. J., dissenting.    W. T. Gilmore, and his wife, M. E. Gilmore, having determined to separate and live apart from each other, entered into an agreement by which the said W. T. Gilmore was to convey certain real estate, together with other property mentioned in the complaint, for the support and maintenance of his said wife, to B. H. Massey, the appellant, as trustee.

Accordingly, a deed of indenture was executed by W. T. Gilmore, B. H. Massey and the said M. E. Gilmore, by which said property, real and personal, was conveyed " to the said Massey, to him and his heirs forever, in trust, that he should allow M. E. Gilmore to occupy, use and enjoy the same, or that he should collect and receive the rents and profits thereof and apply the same to the support of the said M. E. Gilmore in the same manner as if she were *sole* and unmarried."    And, further, " that it shall be lawful for the said B. H. Massey, by deed or other sufficient writing, by and with the written direction and approval of the said M. E. Gilmore, to sell, transfer, deliver and convey the whole or any part of the property and estate herein conveyed and released, to such person or persons, and for such sum or sums of money or other valuable consideration as to him shall seem wise and prudent ; and to sign and deliver good and sufficient title thereof to the purchaser ; and by and with the written direction and approval of the said M. E. Gilmore, to re-invest the proceeds of said sale in other property better adapted to the wants of the said M. E. Gilmore, but subject to the same trusts," &c.    And, further, " that M. E. Gilmore may, by her last will and testament, give, devise and bequeath the whole property hereby conveyed, or that which may be substituted in its place, or may remain unexpended at her death, to such person or persons, and in such proportions as she may

direct and appoint." The said M. E. Gilmore. consenting " to accept the same in full satisfaction for her support and maintenance and all alimony whatever during coverture."

The property mentioned in the deed went into the possession of the trustee and was enjoyed by Mrs. Gilmore during her life. Mrs. Gilmore died in 1878, without making any disposition of the property either by appointment or in writing, by will or otherwise. In the meantime W. T. Gilmore had also died, largely in debt, and his other property proving insufficient to pay his debts, his creditors instituted this proceeding to make the property, conveyed in this deed to the use of his wife, liable for his debts, claiming that a life estate only was given to her, and that, upon her death, the property reverted to the estate of the said W. T. Gilmore. Judge Kershaw, who heard the case, sustained the claim of the plaintiff, and decreed the property liable to W. T. Gilmore's creditors.

Numerous exceptions were taken to this decree, but, upon examination, these exceptions will be found each to raise the same question, which is : Did Mrs. Gilmore take a life, or a fee simple estate under the deed referred to ?

If I felt at liberty to construe this deed without regard to the legal effect of the terms employed, and untrammeled by previous decisions in analogous cases, I might reach a different conclusion from that which a legal construction and the decided cases may demand.

The powers granted to the wife are almost unlimited. She was authorized to take possession and to occupy the property ; to consume in its enjoyment all or any portion of it ; to dispose of it during her life upon such consideration as she saw proper ; and, finally, " if any remained unexpended at her death, to give, bequeath, and devise it to such person or persons as she might direct or appoint, as fully as if she were *sole* and unmarried."

These are the powers which usually belong to an absolute estate, and if we were to confine our attention to the consideration of these, as alone bearing upon the question under discussion, it would be difficult to shut out the conclusion that it was the intention of the parties here to create an absolute estate.

T

But many cases, very similar in their facts to this case, have been passed upon and decided in our own courts.

We must look at these cases, and, extracting the principle upon which they have turned, apply it to this case and decide it as this principle shall require.

It is a familiar principle, found in all the elementary books on the subject of estates, that the term "heirs" is the apt and legal term uniformly to be used in the creation of estates of inheritance. At one time no other term would answer the purpose, and no estate of inheritance could be created without its use. This rule, however, has been relaxed somewhat, and especially in the case of wills and devises. It has been relaxed in these, because it has been thought that such instruments were entitled to a more liberal construction than others, on account of the emergency which sometimes surrounds the parties executing them—different from that which usually attends the preparation of other papers. In accordance with this relaxed rule, it has been held in many cases that no words of limitation are necessary in a devise to convey a fee simple estate. *McAllister* v. *Tate*, 11 *Rich.* 509. And in the general statutes of this state it has been enacted "that a gift of land by devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator, expressed or implied." *Gen. Stat., ch. LXXXVI.*, § 9. If, then, the contest here was over the construction of a devise, with the enlarged powers given to the devisee, as are found in this deed, there would not be much difficulty under the principle referred to above in determining the question at issue. The amplitude of the powers conveyed, accompanied with the indefinite character of the estate created, would sufficiently indicate the intention of the parties, and would so clearly mark the estate as an estate in fee simple, that there could be but little doubt on the subject. *Pulliam* v. *Byrd*, 2 *Strob. Eq.* 142.

But the instrument in this case is not a devise—it is a deed. We have found no authority for extending the principle which, as we have seen, applies to devises, to estates created by deed. On the contrary, as far as we have been able to discover, the common law rule requiring the use of words of inheritance to

create a fee remains unchanged as to deeds, and the term *heirs* must still be employed in such instruments when it is desired to create such an estate. *Knotts* v. *Hydrick*, 12 *Rich.* 318; 4 *Kent* 5.

No such term is found in this deed qualifying the estate conveyed to Mrs. Gilmore; and if the estate here was a legal estate, and conveyed directly to her without the intervention of a trustee, there would be no room for the position that a fee simple had been created and given to her. The principles referred to above would settle the question at once. In such case, in the absence of words of inheritance and all other words limiting or defining the duration of the estate, under the principle that the deed must be construed most strongly against the grantor, and, therefore, that the largest estate that the language employed would carry, must have been intended, the court, no doubt, would conclude that Mrs. Gilmore took a life estate, with full power of disposisition and appointment, according to the terms and provisions of the deed; and the case would end at this point.

But the estate conveyed here is not a legal estate; it is a trust estate. Will that fact modify, change or enlarge this principle, is the question which now opens for consideration.

It has been decided in this state, first as far back as 1811, and frequently since, that the character of trust estates, both of real and personal property, must be determined in equity upon the same rules of construction as are applied to legal estates. *Cudworth* v. *Thompson*, 3 *Desaus.* 256. They have generally the same incidents and qualities, and in endeavoring to ascertain the quantity of a given trust estate, equity follows the same rules, and applies the same principles, which, in a like purpose, the law courts apply to estates. 2 *Washb.*, *Book* 2, *ch. III.*, §§ 2, 3; 4 *Kent* 6.

It would follow, then, that this being an estate in equity, or a trust estate, would make no difference as to the questions involved.

These general principles are not contested by the appellant, as we understand. But it is contended that, although an absolute estate is not given in terms to the *cestui que trust,* Mrs. Gilmore herself, yet that such an estate is given to her trustee—the conveyance to

him being in terms "to him and his heirs forever." That by these words the fee passed out of the grantor upon the execution of the deed ; and this fact, lifting the case from under the principles referred to above, operates to enlarge the estate in the *cestui que trust* into an absolute estate, and without possibility of return to the grantor. Now we have seen that the estate which was given to Mrs Gilmore, when considered by itself and judged by the rules applicable to the construction of a deed like that under which she held, was a life estate, nothing more. Can the fact be, that because, in the same instrument a fee was given to her trustee, who was to hold for her use and benefit, that that will enlarge her life estate into a fee simple ? As to the question of intention, it may be asked if such was not the purpose of passing the entire estate out of the grantor into the trustee, what was the purpose ? It certainly could not have been for the benefit of the trustee, and it is contended, therefore, that it must have been for the benefit of the wife.

It will be remembered that Mrs. Gilmore was invested with the power to sell and convey during her life, or rather that the trustee was authorized to do so upon her written directions. She was also empowered to dispose of the entire estate by will. Was it not necessary, for the purpose of meeting the exercise of these powers on the part of Mrs. Gilmore that some one should be clothed with the fee so as to be able to convey to her vendee or appointee, as the case might be, that full estate which she could create or appoint under the provisions of the deed, and yet, having but a life estate herself, had no power to convey it to such vendee or appointee ? This may have been the reason for investing the trustee with the fee.

"Where an estate is given to trustees in fee upon trusts that do not exhaust the whole estate, and a power is superadded which can only be exercised by the trustees conveying in fee simple, the trustees will take the fee, and the estate conveyed by them will be sustained by the fee in them, and not by the mere power." *Perry on Trusts*, § 316, *p.* 293. It is true that by this author, (Section 312), it is stated that the statute can only execute in the *cestui que trust* the estate which the trustee himself takes, that is, the statute executes or transfers the exact

estate given to the trustee. But we have nowhere found the doctrine suggested that the quantity of the estate conferred upon the *cestui que trust* is to be measured by that which may be conferred on the trustee instead of by the language which is used as to the *cestui que trust* herself.

It is often important to know the exact legal interest of the trustee in the estate, not so much, however, to ascertain the quantity of interest conveyed to the *cestui que trust*, but to measure the powers of the trustee. On this principle " two rules of construction have been adopted by courts : *First.* Whereever a trust is created, a legal estate sufficient for the purposes of the trust shall, if possible, be implied in the trustee, whatever may be the limitations in the instrument, whether to him and his heirs or not. And, *second*, although a legal estate may be limited to a trustee to the fullest extent as to him and his heirs, yet it shall not be carried further than the complete execution of the trust necessarily required." *Perry on Trusts*, § 312. See, also, §§ 318, 319, 320.

We do not think that in this case the life estate of Mrs. Gilmore was enlarged to a fee on account of the fact that the trustee, for the purposes of his trust, was invested with such an estate.

It may be that upon the death of the husband, there being then no longer any necessity for a trustee, that the use became executed in the wife. If this be so it could not help the appellant, because the statute could execute in her no greater legal estate than she previously had in equity, which, as we have seen, was a life estate.

Lastly, upon the termination of the life estate of Mrs. Gilmore did the fee result to the debtor or his heirs, or did it pass to the heirs of Mrs. Gilmore?

The general rule on this subject seems to be that where the use as to a part is only declared, the residue would result to the grantor or his heirs, if he be dead. As where a conveyance is made by a man to the use of his heirs, and no use is declared of the same during his life, an estate for life arises in his own favor by implication. So, besides the use to his heirs, if he had declared an immediate use to one for years, so much of the use as

would be left between the expiration of the term for years and the grantor's death, when the use to his heirs would be executed, would result to him.

So, too, and what is more in point: " If the limitation be by A for a valuable consideration to B in fee, to the use of B for life, without any other declaration, the use in fee, after the death of B, would result to the grantor." *Washb., vol. II.,* 397.

" As a general rule, it is true that where the owner, for a pecuniary consideration, conveys lands to uses, especially declaring a part of the use, but making no disposition of the residue, so much of the use as the owner does not dispose of remains in him." *Id.* 397, quoting from a New York case.

Under these principles I think there was a resulting trust in this case to the grantor or his heirs, and I concur with Judge Kershaw in so holding. This is so, because a use in part only of the estate was declared in the deed, *i. e.,* a life estate in Mrs. Gilmore, leaving the residue undisposed of. It is true, as is contended by appellant, that where the deed is based upon a valuable consideration, however small, even if it be a pepper-corn, as stated in some of the cases, this fact will sometimes be laid hold of by the courts as an evidence of the intention of the parties to carry the whole estate, and it will usually be held to prevent a resulting trust.

But this doctrine does not apply to a case of this sort. There is a qualification to that class of cases where a resulting trust is claimed between the original parties, upon the execution of a deed to one party, where the purchase money is paid by another, or where a voluntary deed is executed by one to another, without any declaration of trust, and the question arises to whom does the property belong, the grantor or the grantee? In such case the fact of consideration will determine the question. But, as we have said, this doctrine has no application here. And even if it had, we do not see that any valuable consideration was present in this case. There is no evidence that the nominal consideration mentioned in the deed was ever paid by the trustee, or ever expected to be paid, and the husband was certainly under both legal and moral obligation to support and maintain his wife.

Whether the property which he allowed her the use of during

life was more than sufficient for this purpose, we do not know nor is that material. Was it not his duty to furnish this, independent of any covenant that she might make? But I do not see that any such covenant was made by her, or any other legal consideration furnished by her, as a foundation of his deed, such as, in contemplation of the law, would prevent a resulting trust.

For the reasons given herein, I have been unable to concur in the opinion of the majority of the court. That opinion, while admitting the general rule as to the necessity of the use of the word "heirs" to convey a fee in a deed, holds that there are exceptions to this rule, and that this case falls under one of these exceptions, and Mr. Washburn, Book 2, ch. III., ¶¶ 40, 43, is referred to.

I do not understand Mr. Washburn as sustaining the views of the majority. In my judgment the paragraphs cited refer to the estate of the trustee and not to that of the *cestui que trust.* The idea suggested is that whatever may be the quantity of the estate, in terms, given to the trustee, yet, if the interest conveyed to the *cestui que trust* requires that the trustee shall have a fee, then the law will confer it upon him, although the word "*heirs*" is not used in the deed to him. In other words, whenever a fee is created for the use of the *cestui que trust*—a fee being necessary in the trustee to protect the interest of the *cestui que trust*—he shall have a fee also. Mr. Washburn does not enlarge the rules by which it is to be determined whether or not a fee has been created for the *cestui que trust.* Nor do I think the cases referred to in the opinion of the majority fully sustain the position taken. In *Villiers* v. *Villiers,* 2 *Atk.* 71, Lord Hardwicke did say: "That if land be given to a man without the word '*heirs,*' and a trust be declared of that estate, and it can be satisfied in no other way but by the *cestui que trust* taking an inheritance, it has been construed that a fee passes to him even without the word 'heirs.'" This is in exact accordance with the construction given above to the doctrine laid down by Mr. Washburn. The question being, what estate did the trustee take? "the man to whom the land was given"—but not the estate of the *cestui que trust*—Lord Hardwicke said that where the estate of the *cestui que trust* could be satisfied in no other way but by his taking an

inheritance—that is, where an estate of inheritance was given to the *cestui que trust*—"the man to whom the land was given," that is, the trustee should also have a fee, although the word "heirs" was not used in the conveyance to him. The case of Fisher *v.* Fields, in which Chancellor Kent delivered the opinion of the court, arose upon an assignment of a soldier's patent for land. The question was, whether the assignee was entitled to a fee when the word "heirs" was not used in the assignment. Chancellor Kent very properly said "that the *transfer* of a soldier's patent was not to be tested by the strict technical rules of the conveyances of land at common law." And so would we say here on such a paper; but the paper here is a conveyance of land, and not a mere soldier's patent.

Failing to agree with the majority, this is filed as my dissenting opinion.

Appeal sustained.